IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TEDDY TONELL DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 2:18-cv-08032-LSC |
| | ) | (2:15-cr-00283-LSC-HNJ) |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OF OPINION

## I.    Introduction

Pursuant to 28 U.S.C. §2255, Teddy Tonell Davis ("Davis), has filed with the Clerk of this Court, a motion to vacate, set aside, or correct his sentence of 188 months imprisonment followed by 240 months of supervised release. (Doc. 1) The Government has responded in opposition to the motion. (Doc. 5.) For the reasons set forth below, Davis' § 2255 motion is due to be denied and this action dismissed without an evidentiary hearing.

## II.    Background

### A. Trial and Sentencing

On September 24, 2015, Davis was charged, along with twenty-four other defendants, in a superseding indictment in *United States v. Hall, et al.,* 2:15-cr-

00283-LSC-HNJ-10 (Hereinafter "*Hall*"). (Cr. Doc. 17.) The *Hall* indictment alleged that Davis conspired to possess with the intent to distribute, and to distribute, heroin, cocaine hydrochloride, and "crack" cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(C). (*Id.*) Davis was additionally charged with three counts of using a telephone in furtherance of the drug trafficking conspiracy in violation of 21 U.S.C. § 843(b). (*Id.*)

On October 21, 2015, the *Hall* indictment was unsealed (crim. doc. 20), and Davis was placed under arrest (crim. docket entry at 10/21/2015). Following Davis's arrest, Attorney Donald L. Colee, Jr. was appointed counsel. (Cr. Doc. 75.) On October 23, 2015, Davis was arraigned (Crim Docket entry at 10/23/2015), and he was remanded into custody of the United States Marshals Service, pending trial (Crim. Doc. 89). Two months later, on December 9, 2015, Mr. Colee withdrew as Davis's counsel, and Attorney Charles S. Linton was appointed to represent Davis. (Crim. Docket Entry at 12/09/2015; Crim. Doc. 127.)

On February 8, 2016, pursuant to a sealed plea agreement, Davis entered a plea of guilty to each of the charges against him. (Crim. Docket entry at 02/08/2016; Cr. Doc. 213.) On June 30, 2016, this Court entered judgment against Davis, sentencing him to 188 months' imprisonment as to count one and forty-eight months' imprisonment as to counts twenty, forty-nine, and sixty-three, separately,

each sentence to run concurrent with one another. (Cr. Doc. 410.) This Court additionally sentenced Davis to 240 months of supervised release upon his release from imprisonment. (*Id.*)

## B. Appeal

Davis filed a notice of appeal from his sentence on June 30, 2016. (Crim. Doc. 419.) On January 30, 2017, the Eleventh Circuit Court of Appeals granted a motion to withdraw filed by Davis' trial counsel. (Crim. Doc. 569) That same day, the Eleventh Circuit appointed Christopher K. Friedman as appellate counsel for Davis. (Crim Doc. 570) On February 13, 2018, the Eleventh Circuit affirmed Davis's conviction and sentences. (Crim. Doc. 634) Following the Eleventh Circuit's decision, Davis petitioned the Supreme Court of the United States for writ of certiorari; however, on June 12, 2018, the Supreme Court denied the petition. (Crim. Doc. 652) Davis remains in custody.

## C. § 2255 Proceedings

On November 2, 2018, Davis executed a § 2255 motion, which was entered by the Clerk on November 6, 2018.[1] (Doc. 1.) Liberally construing Davis' claims,[2] Davis

---

[1]     The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

[2]     This Court liberally construes Davis' pleadings as he is a *pro se* litigant. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

asserts the following bases upon which § 2255 relief should be granted:

    a. Trial counsel, Charles S. Linton, was ineffective in calculating the appropriate sentence guidelines prior to Davis's pleading guilty. (Doc. 1 at 6, 17-19.)

    b. Trial counsel, Charles S. Linton, was ineffective for failing to challenge the quantity of drugs attributed to Davis's involvement in the conspiracy, which was subsequently used to calculate Davis's sentencing guidelines range in the presentence investigation report ("PSR"). (*Id.* at 23-28.)

    c. Trial counsel, Charles S. Linton, was also ineffective for failing to object to the presentencing investigation report's calculations under the Armed Career Criminal Act ("ACCA"), in accord with *Session v. Dimaya* and *Johnson v. United States*. (*Id.*)

    d. This Court committed error by failing to independently determine the existence of a factual basis for Davis's guilty plea-specifically the quantity of drugs attributed to Davis. (*Id.* at 9, 20-32.)

(Doc. 1).

## III.    Timeliness and Non-Successiveness of the § 2255 Motion

The Supreme Court denied Davis's petition for writ of certiorari on June 12, 2018. (Cr. Doc. 652.) Davis filed the instant § 2255 motion on November 2, 2018, within one year after the date in which his conviction became final, making his filing timely. *See* 28 U.S.C. § 2255(f)(1).

Davis is bringing his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are

affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the court to conduct an evidentiary hearing if, "accept[ing] all of the [movant's] alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A. Ineffective Assistance of Counsel

Davis asserts three grounds of ineffective assistance of trial counsel in his § 2255 motion. All three of these assertions are meritless and will be dismissed without a hearing. Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, "the defendant must show that counsel's representation fell below an objective standard

of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the

court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable: "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the State's case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015) (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

As further analyzed below, Davis' counsel could not have been ineffective for failing to raise these issues because they are all meritless, having no basis in law or fact. Thus, it was reasonable for Davis's counsel to not present the frivolous claims Davis now raises, and Davis cannot demonstrate that the outcome of his sentence was adversely affected.

> ### 1. Davis's Claim of Ineffective Assistance of Counsel on the Basis that Trial Counsel Improperly Calculated Defendant's Sentencing Guideline Range Is Unsupported and Without Merit.

Davis first claims that his defense counsel, Mr. Scott Linton, was ineffective in failing to properly calculate his sentencing guidelines prior to entering into his plea agreement with the Government. The Eleventh Circuit has held that claims of a non-constitutional nature in the application of the Sentencing Guidelines, "in the absence of a complete miscarriage of justice," may not be raised in a § 2255 motion. *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998). Davis's claim is ultimately meritless, as further reasoned below, and thus he cannot establish that a miscarriage of justice occurred here.

In Davis's motion to the Court, he claims that counsel promised him a sentencing range between 60 and 120 months. (Doc. 1 at 17.) Mr. Linton denies the allegations, stating by affidavit that he merely provided an estimation of what he believed Davis's sentencing guidelines would be based both on his professional experience and his own calculations at the time. (Doc. 5-1 at 1.) Mr. Linton's sworn statement is supported by Davis's own exhibit, a letter from Mr. Linton to Davis, Mr. Linton explained that he was only providing an estimate for what he believed Davis's sentencing guideline range would be. (Doc. 1 at 31-32.)

In the letter, Mr. Linton stated, "Depending on your criminal history, it is possible that you could receive more than 60 months, but not less." (*Id.*) Here, Mr. Linton first qualified his statement by stating "[d]epending on your criminal history." This Court interprets that qualifying statement to mean that there was uncertainty as to whether Mr. Linton was fully informed by his client of the latter's criminal history, limiting Mr. Linton's ability to make a more accurate calculation. This interpretation is supported by Mr. Linton's affidavit, which explained that Mr. Linton checked for Mr. Davis's prior convictions on alacourt.com, which does not display youthful offender adjudications, and that Mr. Davis "was very vague" when Mr. Linton asked about his prior convictions and "seemed to be evasive." (Doc. 5-1 at 1.)

In the letter Mr. Linton sent to Mr. Davis, Mr. Linton also stated, "Please understand that this is an estimate, and the Court will make the final determination of the advisory guidelines range." (Doc. 1 at 31.) This Court considers Mr. Linton's words to mean exactly what they say, that he was uncertain as to the final sentence this Court would impose. Indeed, the letter is a clear demonstration that Mr. Linton effectively calculated Davis's sentencing guideline range with the information available to him at the time, while maintaining professional caution by purposefully including language to convey this uncertainty and informing Davis that this Court would ultimately make the final determination of his sentence.

Regardless of any potential misunderstanding based on the estimate Mr. Linton provided in the letter, this Court clearly explained to Davis before he entered his guilty plea that his lawyer could only estimate his guideline range. The Court engaged Davis in the following colloquy:

> THE COURT: We are going to talk about the ranges of punishment. There is two ranges of punishment. There is a statutory range and a sentencing guideline range.
> I assume your lawyers have talked to you about what the sentencing guideline range would end up being in your case. I want you to know, they, I am sure, have estimated to the best of their ability what it will end up being. But the sentencing guideline range is advisory; it is to help me determine an appropriate sentence to give you. It is not binding upon me and I cannot even tell you exactly what it will end up

> being for sure until we have your sentencing hearing and I rule on what comes in and what doesn't.
> So, if your lawyer got it wrong, it's just wrong. It will not constitute a reason for you to set aside the guilty plea if you make it.
>
> …
>
> THE COURT:    Mr. Davis, has your lawyer talked to you about the sentencing guideline range?
>
> MR. DAVIS:    Yes, Sir.
>
> THE COURT:    And do you understand what I just said?
>
> MR. DAVIS:    Yes, sir.

(Crim. Doc. 505 at 23-24.) Moreover, Davis was made aware that the maximum term of imprisonment he could receive would be forty years, which was greater than the 188 months he received.

> MR. DIMLER:    Your honor, I was incorrect with regard to the defendant, Mr. Teddy Davis. He was actually charged in the indictment with 500 grams or more of cocaine hydrochloride, so his guideline range would be based on penalty section 841 (b)(1)(B), which is imprisonment not less than five years and not more than 40 years, fine of not more than five million dollars. Both a fine and imprisonment. And supervised release term less than – not less than four years, and a special assessment fee of $100.
>
> THE COURT:    Counsel, do you agree with that?
>
> MR. LINTON:    Yes, Sir.

…

> THE COURT:     Mr. Davis, do you understand what the U.S.
>                Attorney just stated?
>
> MR. DAVIS:     Yes, sir.

(Crim. Doc. 505 at 25-26.) Furthermore, the plea agreement that Davis entered with the Government explained that the maximum punishment for the conspiracy charge was "[i]mprisonment for not less than five (5) years and not more than forty (40) years." (Crim. Doc. 213 at 2.) Davis's initials appear on the pages explaining the maximum punishment for each charge, and he also signed the document verifying that he "read, underst[oo]d, and approve[d] all of the provisions of this Agreement, both individually and as a total binding agreement." (*Id.* at 2-3, 19.)

The letter Mr. Linton sent to Davis, Mr. Linton's affidavit, Davis's acknowledgment of his understanding of the Court's explanation of the sentencing procedures, and his awareness of the range of punishment he was to fall within all demonstrate due diligence on the part of counsel. Davis's allegation to the contrary is not supported by evidence nor law. Accordingly, this Court finds Davis's first claim that trial counsel was ineffective by failing to properly calculate his guidelines prior to entering his plea as simply untrue and therefore without merit.

**2. Davis's Claim that Counsel Was Ineffective for Failing to Object to the Quantity of Controlled Substances Attributed to Him Fails Because Davis Stipulated to its Factual Basis.**

Davis also claims that defense counsel was ineffective on the basis that counsel failed to make specific objections to the quantity of controlled substances attributed to Davis in the PSR. (Doc. 1 at 23-28.) This argument fails. Davis's contention is without merit because Davis knowingly stipulated to both the type and quantity of drugs used to calculate his base offense level for the sentencing guidelines. (Crim. Doc. 213 at 9.)

Davis is correct in so far as he alleges that Mr. Linton did not object to the quantity of controlled substances attributed to Davis in the PSR. At Davis's sentencing hearing, the court specifically asked the defense if there were any objections:

> THE COURT: Have you and your client had at least 35 days to review the presentence report?
>
> MR. LINTON: We have, your Honor.
>
> THE COURT: And you have no objections to it; is that correct?
>
> Mr. LINTON: Well, I filed a request for a downward departure but there were no legal and factual objections to the report.

(Crim. Doc. 506 at 2.)

Mr. Linton's failure to raise the objection, however, was not outside the bounds of what a reasonable attorney would do because his client had already

stipulated to the factual basis for the charges against him, including the quantity of controlled substances attributable to him in the conspiracy. (Crim. Doc. 213 at 9.) In fact, the plea agreement states "Multiple codefendants confirmed the existence of the conspiracy to traffic cocaine, heroin, and "crack" cocaine. Based on this information, Teddy Tonnell Davis is attributed with conspiring to distribute and to distributing two kilograms (kg) or more of cocaine hydrochloride." (*Id.*) Immediately following that sentence, the agreement goes on to say, "The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence." (*Id.*) Davis's signature appears below the paragraph, and his initials are signed at the bottom of the page. (*Id.*)

Furthermore, the Court verified with Davis and his counsel that Davis read and agreed to the factual basis for the charges:

> THE COURT: … All right. Mr. Davis, I have in my hand a document called plea agreement. Your lawyer's showing you a copy of it.
> Do you see that Document?
>
> DEFENDANT DAVIS: Yes, sir.
>
> THE COURT: Are those your initials in the bottom corner of each page?
>
> DEFENDANT DAVIS: Yes, sir.
>
> THE COURT: Did you read this document before you initialed it?

DEFENDANT DAVIS: Yes, sir.

THE COURT: Does this document state all of the agreement you have with the Government?

DEFENDANT DAVIS: Yes, sir.

THE COURT: Does this document state all the agreement your client has with the Government?

MR. LINTON: Yes, sir.

THE COURT: Does this document state all the agreement the Government has with this defendant?

MR. DIMLER: Yes, your Honor.

THE COURT: Page nine, is that your signature there on page nine?

DEFENDANT DAVIS: Yes, sir.

THE COURT: When you signed it there on page nine, were you acknowledging, stipulating, and agreeing that the factual basis that precedes your signature is true and correct and I should rely upon it?

DEFENDANT DAVIS: Yes, sir.

THE COURT: Sir?

DEFEDNANT DAVIS: Yes, sir.

(Crim. Doc. 505 at 32-34.) Davis repeatedly confirmed to this Court, verbally and in writing, that the factual basis for the charges brought against him was correct. For that reason, Davis's counsel was not constitutionally deficient for failing to object to

the factual basis for the quantity of controlled substances attributable to him in the PSR.

### 3. Davis's Claim that Counsel was Deficient for Failing to Object to the Court's Application of the ACCA Fails Because the ACCA Was Not Implicated in His Sentencing.

Davis further alleges that Mr. Linton was ineffective because he failed to make specific objections to this Court's application of the career offender enhancement according to the United States Sentencing Guidelines ("Sentencing Guidelines" or "USSG") § 4B1.1. (Doc. 1 at 23-28) This argument is also without merit for several reasons. First, Davis's claim relies on the holding in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which found the definition of "crime of violence" in the Immigration and Nationality Act was unconstitutionally vague. Davis's case has no immigration implications. However, even if *Dimaya* was relevant, it was decided in 2018, two years after Davis's sentencing in 2016, and there were no means by which Mr. Linton would have been able to predict its outcome. Furthermore, the case that Davis claims made *Dimaya* retroactive, *Welch v. United States*, 578 U.S. 120 (2016) predated that decision by two years, and no other authority suggests that the holding in *Dimaya* has been made retroactive. *See Tyler v. Cain*, 533 U.S. 656 (2001).

Second, Davis's sentence was based on the Career Offender enhancement of the United States Sentencing Guidelines ("Sentencing Guidelines"), § 4B1.1, rather

than the ACCA, 18 U.S.C. § 924(e).  (Crim. Doc. 408 at 46, 50.) While the two provisions are similar, they are not the same. The ACCA imposes a minimum sentence for individuals with "three previous convictions … for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e). In contrast, the Sentencing Guidelines designate someone as a career offender when

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.

Davis specifically contends that the "residual clause" of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), which includes in its definition of "crime of violence" a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another," improperly implicated his prior youthful offender conviction for assault in the second degree and enhanced his sentence by approximately ten years. (Doc. 1 at 25.) Davis contends that Mr. Linton failed to challenge the application of

the "residual clause" in his sentencing. However, this argument fails because the "residual clause" of the ACCA was not used in the PSR, but rather the Career Offender enhancement of the Sentencing Guidelines. (Crim. Doc. 408 at 46, 50.)

In *Johnson v. United States*, the Supreme Court held that imposing a sentence under the residual clause of the ACCA violated a defendant's due process rights as that clause is unconstitutionally vague. 576 U.S. 591 (2015). The Supreme Court in *United States v. Davis* reaffirmed that the "residual clause" of the ACCA was indeed unconstitutional, rendering any attempt to define a crime as a "crime of violence" under that clause invalid. *See generally United States v. Davis*, 139 S. Ct. 2319, 2335 (2019).

Davis was sentenced under the Career Offender enhancement of the United States Sentencing Guidelines. (Crim. Doc. 408 at 46, 50.) While the language in the ACCA and the Career Offender enhancement of the Sentencing Guidelines defining a "crime of violence" is similar, the Supreme Court and the Eleventh Circuit have distinguished the application of these provisions. In *Beckles v. United States*, the Supreme Court explained that the Sentencing Guidelines "are not amenable to a vagueness challenge," "do not implicate the twin concerns underlying vagueness doctrine – providing notice and preventing arbitrary enforcement," and thus, "§

4B1.2(a)'s residual clause [defining "crime of violence"] is not void for vagueness." 137 S. Ct. 886, 894-95 (2017).

The Eleventh Circuit has likewise rejected vagueness challenges to the Sentencing Guidelines based on the holding in *Johnson*. In *United States v. Matchett*, the Eleventh Circuit reasoned that *Johnson*'s holding was "limited to criminal statutes that define elements of a crime or fix punishments…. The Armed Career Criminal Act defines a crime and fixes a sentence, but the advisory guidelines do neither." 802 F.3d 1185, 1194 (11th Cir. 2015) (internal citation omitted). Even in a case where the defendant was sentenced when the Sentencing Guidelines were mandatory, prior to the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005), the Eleventh Circuit stated, "The Guidelines – whether mandatory or advisory – cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge." *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) (citing *Matchett*, 802 F.3d at 1195).

In Davis's case, the PSR makes no mention of the ACCA. (*See* Crim. Doc. 408.) It does, however, reference the Career Offender enhancement under the Sentencing Guidelines: "[A] career offender's criminal history category in every case shall be a category VI. USSG §4B1.1(b)." (*Id.* at 46.) Furthermore, the court

cited the Sentencing Guidelines rather than the ACCA at Davis's sentencing hearing.

> THE COURT: There being no objections, the Court adopts the factual statements contained in the presentence report and makes specific findings that the defendant is a career offender. He has two qualifying convictions.
>
> Pursuant to 4B1.1, the guideline offense level is 31, criminal history category is VI, and the advisory guideline imprisonment range is 188 months to 235 months.

(Crim. Doc. 506 at 2-3.) Mr. Linton did not render constitutionally deficient counsel by failing to raise an objection to the PSR calculations based on *Sessions v. Dimaya* or *Johnson* because such an objection has no basis in law or fact.

Mr. Linton did request a downward departure based on the fact that one of the qualifying convictions the Court referenced in the sentencing hearing was committed when Davis was a youthful offender. (*Id.* at 3-6.) Counsel did note, however, that law within the Eleventh Circuit supports a finding that a youthful offender conviction may serve as a predicate offense for classification as a career offender. (*Id.* at 4.) *See United States v. Elliot*, 732 F.3d 1307, 1310-1313 (11th Cir. 2013).

Davis's argument that Mr. Linton rendered ineffective assistance of counsel based on his failure to raise an objection to the PSR calculations of his advisory guideline range fails. Such an objection would have no merit because *Johnson* does not apply to sentences imposed under the career offender enhancement of the Sentencing Guidelines. Furthermore, counsel did request a downward departure in spite of the fact that Eleventh Circuit precedent supports the use of youthful offender convictions as the basis for a career offender classification. For all of these reasons, Davis's claim that Mr. Linton's counsel was ineffective fails.

### B. Davis's Claim that This Court Improperly Accepted His Guilty Plea Fails Because the Eleventh Circuit Affirmed This Court and Because Davis Stipulated to the Factual Basis.

Davis claims that the District Court erred by accepting his guilty plea because the Government failed to produce adequate evidence in support of his guilt and quantity of drugs attributed to him. (Doc. 1 at 20-23.) The Eleventh Circuit disagreed, determining that this Court "could reasonably find that Davis was part of a conspiracy, and that more than 500 grams of cocaine were attributable to Davis based on his role in the conspiracy. These facts satisfy the court's Rule 11 obligation to find a sufficient factual basis for the plea."[3] (Crim. Doc. 634 at 5.) The issue of

---

[3] At the trial level, this Court found that 2 kilograms of cocaine were attributable to Davis. The Eleventh Circuit's statement that more than 500 grams of cocaine were attributable to Davis refers to the threshold for sentencing under 21 U.S.C. § 841(b)(1)(B). The Eleventh Circuit also noted that the PSR indicated that two kilograms were attributable to Davis. (Doc. 634 at 4.)

whether this Court properly accepted Davis's plea agreement has been squarely decided by the Eleventh Circuit. (*Id.*) "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012). Absent a showing of such a change in the law, "[t]he district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (citing *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981)). As noted above, the decision subsequently announced in *Sessions v. Dimaya* did not apply to Davis's case, and he has failed to demonstrate any other change in law that would require this court to reconsider this challenge.

Additionally, the quantity of drugs to be attributed to Davis was clearly indicated in the plea agreement, which Davis signed. The plea agreement contained a factual basis to demonstrate his guilt of the specified offenses. (Crim. Doc. 213 at 3-9) As noted above, the plea agreement read, "Based on this information, Teddy Tonnell Davis is attributed with conspiring to distribute and distribute two kilograms (kg) or more of cocaine hydrochloride." (Crim. Doc. 213 at 9). Immediately below this section, Davis's signature appeared and was again specifically referenced by this Court during the hearing in which Davis pled guilty:

| | |
|---|---|
| THE COURT: | Page nine, is that your signature there on page nine? |
| MR. DAVIS: | Yes, Sir. |
| THE COURT: | When you signed it there on page nine, were you acknowledging, stipulating and agreeing that the factual basis that precedes your signature is true and correct and I should rely upon it? |
| DEFENDANT: | Yes, Sir. |

(Crim. Doc. 505 at 33-34.) By engaging in this colloquy, this Court clearly established that Davis understood the terms of his plea agreement and the nature and consequences of what he was admitting.

Moreover, Davis entered into an appeal waiver, agreeing to neither appeal nor file a lawsuit collaterally attacking his conviction or sentence, with the exception reserved for when the sentence imposed exceeded the statutory maximum or applicable guidelines, or where there exists an allegation of ineffective assistance of counsel. (Crim. Doc. 213 at 11.) In the instant case, none of those exceptions, apply, because in this allegation, Davis is attributing the error to this Court, not Mr. Linton.

For the reasons stated above, this Court finds that Davis has not demonstrated error on the part of the Court in accepting his guilty plea, and therefore, this claim is also without merit.

## VI.    Conclusion

For the foregoing reasons, Davis' § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional debatable and wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve to proceed further." *Miller-EL v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations omitted).* This Court finds that Davis' claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON OCTOBER 20, 2021.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728